UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kecia Hatcher | |
| Plaintiff, | 23-cv-3510 (NRM) (LB) |
| v. | **MEMORANDUM AND ORDER** |
| New York City Department of Education, Dr. Richard Forman, and Deborah R. Koswener-Bochbot, | |
| Defendants. | |

NINA R. MORRISON, United States District Judge:

*Pro se* Plaintiff Kecia Hatcher, a speech therapy teacher at Clara Barton High School, brings this employment discrimination suit against the New York City Department of Education ("DOE"); Dr. Richard Forman, the Principal of Clara Barton High School; and Deborah R. Koswener-Bochbot, the Supervisor of Speech Improvement for District 17. Compl. 1, ECF No. 1. Plaintiff, a Black woman, brings claims for race and sex-based discrimination under federal, state, and local law. *Id.* at 4–5, 7. Defendants DOE, Forman, and Koswener-Bochbot move to dismiss, arguing that some of Plaintiff's claims are procedurally barred and that the remainder fail to state a claim. *See* Mot. to Dismiss, ECF No. 25; Defs.' Mem. in Supp. of Am. Mot. to Dismiss ("Defs.' Mem."), ECF No. 25-1. For the reasons to follow, the Court grants in part and denies in part Defendants' motion.

1

## FACTUAL BACKGROUND

Plaintiff alleges the following facts, which the Court takes as true for the purposes of this opinion.  Plaintiff began her employment at Clara Barton High School in September 2005.  Compl. at 6.  For over ten years, Evan Malachowsky, a white male teacher, subjected Plaintiff to hostile treatment by, *inter alia*, yelling at her, excluding her from school events, telling parents and students to avoid and ignore her, and making fun of her Afrocentric jewelry, fabrics, and headwrap.  *Id.*  On December 4, 2019, Plaintiff provided services to one of Malachowsky's students whose Individualized Education Plan ("IEP") required that the student be escorted back to class.  *Id.*  However, neither Malachowsky nor the assigned paraprofessional arrived to pick up the student.  *Id.*  Plaintiff called the paraprofessional supervisor to ensure that the student was escorted back to class in compliance with the student's IEP.  *Id.* Malachowsky later berated and screamed at Plaintiff in front of other students.  *Id.* On December 5, 2019, Plaintiff filed a racial discrimination complaint with DOE's Office of Equal Opportunity ("OEO") against Malachowsky.  *Id.*  The OEO informed Plaintiff that the complaint was not substantiated on May 20, 2020.  *Id.*

On June 24, 2020, during a round-table discussion on police brutality, Plaintiff commented that people of color felt that there were "two different systems of justice" within the school.  *Id.*  Forman, the school principal, then stated in front of Plaintiff's colleagues that Plaintiff had filed an OEO complaint that had been dismissed, which is how Plaintiff learned of the complaint's dismissal. *Id.* at 8.  Plaintiff emailed Forman the next day, explaining that she "felt this was a form of subtle racism." *Id.*

Forman's behavior towards Plaintiff then changed and he began avoiding her at work. *Id.*

The following semester, in September 2020, "Malachowsky received a letter to file following [the] OEO complaint against him." *Id.* On December 18, 2020, Malachowsky falsely accused Plaintiff of threatening a parent to another colleague, which Plaintiff concluded was in retaliation for the OEO complaint she had filed. *Id.* Plaintiff requested that Forman intervene, but "Malachowsky refused to participate in any intervention, and no further action was taken." *Id.* Plaintiff consequently filed a second OEO complaint against Malachowsky on January 28, 2021, which the OEO dismissed and referred to Forman on April 5, 2021 because it lacked jurisdiction to investigate the matter. *Id.* Forman again took no action against Malachowsky. *Id.*

In October 2021, Plaintiff suffered adverse reactions to the mandatory COVID-19 vaccine, *id.*, which caused her to miss work, *id.* at 9. During an annual year-end meeting on May 27, 2022, Forman accused Plaintiff of accruing excessive absences, *id.* at 8, which prompted Plaintiff to provide Forman with "doctor's notes for every day [she] had missed except a few that were self-treated," *id.* at 9. In a letter dated June 6, 2022, Forman and Koswener-Bochbot falsely accused Plaintiff of cancelling 618 therapy sessions and a pattern of vacation-related absences. *Id.* Thereafter, Plaintiff received her first ever Unsatisfactory ("U") rating in an annual performance review on June 17, 2022. *Id.* Forman justified this rating at Plaintiff's appeal hearing with misleading and false information. *Id.*

3

Several of Plaintiff's colleagues engaged in similar conduct but did not receive discipline or other adverse actions. *Id.* Vera Leykinda, a white woman, had a similar number of absences and received a similar letter, but did not receive a U-rating. *Id.* When Dr. Kamaria Blackett-Munir, PT, and Ms. Stanislaus, OT, took maternity leave, their students did not receive services and no action was taken. *Id.* Additionally, Malachowsky consistently ends instructional time early yet has not been disciplined for robbing students of instructional time. *Id.* at 10.

Because of the June 2022 U-rating, Plaintiff became "ineligible to work summer school" and, in turn, lost "pensionable income." *Id.* The U-rating could also "potentially limit DOE employment opportunities after retirement." *Id.*

On August 31, 2022, Plaintiff filed a dual State Division of Human Rights ("SDHR") and Equal Employment Opportunity Commission ("EEOC") complaint. *Id.* at 9. She identifies several additional acts of retaliatory adverse treatment that followed that complaint. *Id.* First, in October 2022, Koswener-Bochbot took Plaintiff's "per session" caseload and gave those sessions to a white, newly hired, part-time speech therapist, Kristin McMahon. *Id.* Defendants continue to deny Plaintiff "per session" opportunities, which "has resulted in a loss of approximately $10,000," *id.*, and adversely affects Plaintiff's pensionable income, *id.* at 10. Next, on March 13, 2022, Koswener-Bochbot forced Plaintiff, but not McMahon, "to attend a meeting after school, designated for anyone that provided services to special education students." *Id.* Finally, at various times during the 2022–2023 school year, when Plaintiff requested that the heat in her classroom be turned on, "they sent someone

to check the temperature of the room and then sent [her] the DOE guidelines for heat," while other teachers' requests for heat were not "subjected to this type of scrutiny." *Id.*

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on May 10, 2023.  Compl.  She alleges that Defendants New York City Department of Education, Forman, and Koswener-Bochbot discriminated against her and subjected her to a hostile work environment based on her race and sex and retaliated against her for complaining about the harassment and discrimination. *See id.* at 1, 5, 7. 10.  Defendants moved to dismiss the action on December 26, 2023.  Mot. to Dismiss.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

In addition, *pro* se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Because Plaintiff is proceeding *pro se*, the Court will construe her submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Nicholas v. Bratton*, No. 15-cv-9592,

5

2019 WL 2223407, at *3 (S.D.N.Y. May 23, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## DISCUSSION

Defendants make four arguments in support of their motion to dismiss: (1) Plaintiff's New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL") claims against DOE must be dismissed for failure to comply with the notice of claim requirement; (2) Plaintiff's claims are partially time-barred; (3) there is no individual liability under Title VII or SHRL; and (4) Plaintiff fails to state claims.  Defs.' Mem.  The Court addresses each argument in turn.

## I. Whether Plaintiff Complied with SHRL and CHRL Notice of Claim Requirements

Section 3813(1) of New York Education Law "requires that allegations may not be the subject of a lawsuit unless first presented to the school within three months after the claim's accrual." *Berrie v. Bd. of Educ. of Part Chester-Rye Union Free Sch. Dist.*, No. 14-cv-6416, 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017).  More specifically, § 3813(1) requires that it appear "as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such a claim." N.Y. Educ. Law § 3813.  Courts have held that "the requirement is met by any document sufficiently formal and detailed for the District to investigate the claims." *Berrie*, 2017 WL 2374363, at *8.  Here, the parties dispute whether Plaintiff's charge of discrimination that she

filed with the SDHR and EEOC on August 31, 2022 satisfies this notice of claim requirement. *See* Defs.' Mem. at 16

"While an EEOC or SDHR complaint may satisfy the notice of claim requirement, '[P]laintiff must still plausibly allege that the administrative complaint met [Section] 3813's requirements.'" *Lovallo v. New York City Dep't of Educ.*, No. 23-cv-834, 2024 WL 1329793, at *7 (S.D.N.Y. Mar. 27, 2024) (alterations in original) (quoting *Bagarozzi v. New York City Dep't of Educ.*, No. 18-cv-4893, 2019 WL 1454316, at *4 (S.D.N.Y. Mar. 31, 2019)). That is, the charge must put "the school district on notice of the precise claims alleged, [be] served on the governing board of the district (and not a different arm of the district), and [be] served within the statutory time period." *Legrá v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 14-cv-9245, 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016).

Because Plaintiff simply alleges that she "dual filed SDHR and EEOC complaint on or about August 31, 2022," Compl. at 9, it is not clear whether the complaint satisfies the notice of claim requirement. Accordingly, the Court is bound to dismiss Plaintiff's SHRL and CHRL claims against Defendant DOE.

However, the Court will grant Plaintiff leave to amend her Complaint to include more information about whether her SDHR and EEOC charge satisfies the notice requirement. Plaintiff may amend her Complaint, if she chooses to do so, to provide additional information about whether the complaint was served on the governing board of the school district and alleged sufficiently precise charges to put the DOE on notice of the claims in this lawsuit.

## II. Whether Plaintiff's Claims Are Partially Time-Barred

The parties agree that a three-year statute of limitations applies to Plaintiff's CHRL and SHRL claims against the individual defendants.  Defs.' Mem. at 17. Plaintiff argues, and Defendants do not appear to dispute, that her EEOC charge tolled the statute of limitations.  Pl.'s Mem. in Opp. to Defs.' Am. Mot. to Dismiss ("Pl.'s Opp.") 12, ECF No. 24; *see* Defs.' Mem.

The Court agrees.  While "[t]he Second Circuit has held that 'filing an EEOC charge does not toll the limitations period for state-law *tort* claims," *Lovallo*, 2024 WL 1329793, at *9 (quoting *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014)), district courts in this Circuit have held that the Second Circuit's holding in *Castagna* "does *not* extend to NYSHRL and NYCHRL claims, such that the filing of an EEOC [charge] *does* toll the statute of limitations for state law discrimination claims." *Id.*

The statute of limitations is thus tolled for the 161-day period between the filing of Plaintiff's EEOC charge on August 31, 2022, Compl. at 9, and the issuance by the EEOC of her right-to-sue letter on February 8, 2023, Compl. at 13. Accordingly, Plaintiff is "time-barred from recovering under the NYSHRL or NYCHRL for any acts of discrimination which occurred prior to" December 1, 2019, "three years and [161] days prior to the filing of this suit, though evidence of such time-barred acts may be considered for context."  *DeNigris v. New York City Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012).  Plaintiff does not allege acts of discrimination that predate December 1, 2019.  *See* Compl.

The parties also agree that the Title VII required Plaintiff "to file a charge of discrimination with the EEOC and receive a right to sue notice," and that the EEOC

claim must have been filed "within 300 days of the discriminatory conduct." *Daniels v. Juniper Elbow Co.*, No. 14-cv-4898, 2015 WL 1514446, at *1 (E.D.N.Y. Apr. 2, 2015) (citing 42 U.S.C. § 2000e–5(e)); *see* Defs.' Mem. at 17; Pl.'s Opp. at 13. Any discrete acts of discrimination that predate November 4, 2021 are thus not actionable under Title VII.

But "[i]dentifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination or retaliation that began outside the statutory period." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Accordingly, "claims tied to discrete acts in an ongoing adverse employment action that occurred within the statute of limitations period are not time-barred." *Id.* Courts can also consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, . . . so long as an act contributing to that hostile work environment takes places within the statutory time period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citation omitted). Additionally, Defendants' alleged conduct that occurred before November 4, 2021 and that could suggest discriminatory animus "are properly considered 'as background evidence' even though they occurred outside of the applicable limitations period." *Ferraro v. New York City Dep't of Educ.*, No. 13-cv-5837, 2015 WL 1476392, at *2 (E.D.N.Y. Mar. 31, 2015).

## III.  Whether There Is Individual Liability Under Title VII and the SHRL

Defendants argue, and Plaintiff concedes, that there is no individual liability under Title VII. Defs.' Mem. at 18; Pl.'s Opp. at 13. The Court thus dismisses Plaintiff's Title VII claims against the individual defendants. *See Operaji v. United*

*Fed'n of Tchrs.*, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006) ("Individual defendants are not subject to personal liability under Title VII.").

As for individual liability under the SHRL, the New York Court of Appeals clarified in *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 458 (2021), that the statute "does not render employees liable as individual employers." Accordingly, individual defendants can only be held liable under the SHRL's provision that makes it unlawful "to aid, abet, incite, compel or coerce" any acts prohibited by the statute. N.Y. Exec. Law § 296(6).

To state an aiding and abetting claim, "a plaintiff must allege that a defendant 'actually participated in the alleged discriminatory acts.'" *Bonterre v. City of New York*, No. 18-cv-745, 2021 WL 4060358, at *7 (S.D.N.Y. Sept. 7, 2021) (quoting *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 328 (2004)). While "[t]here has been some disagreement among district courts in this circuit regarding the extent to which an individual may be held liable under" an aiding and abetting theory "for conduct for which they are also the principal actor," this Court joins the "'majority' interpretation that a claim [for aiding and abetting] is stated if an employee participates in the alleged conduct, regardless of whether such participation also constitutes a primary violation of NYSHRL or whether other employees were involved." *Id.* at *7–8.

Therefore, as the Court assesses the merits of Plaintiff's SHRL claims, it will consider the extent to which Defendants Forman and Koswener-Bochbot "actually participated" in the allegedly unlawful conduct.

**IV.    Whether Plaintiff States a Claim Against Defendants**

Finally, Defendants argue that Plaintiff fails to plausibly allege causes of action. *See* Defs.' Mem. at 11. In addressing the merits of Plaintiff's claims, the Court does not assess whether each of Plaintiff's factual allegations suffices to state a claim on its own. Rather, the Court only analyzes whether *any* of Plaintiff's allegations, taken individually or collectively, plausibly state a claim for employment discrimination, such that the cause(s) of actions to which those allegations relate can be sustained. *See generally Iqbal*, 556 U.S. 662.

**A. Discrimination**

Plaintiff brings discrimination claims under Title VII, SHRL, and CHRL. The Court first analyzes Plaintiff's Title VII and SHRL claims together, as they are governed by the same standard. *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323–24 (S.D.N.Y. 2020).

i.    Title VII and SHRL

Title VII and SHRL both prohibit discrimination against an employee based on race or sex. Claims under both Title VII and SHRL are governed by the three-step *McDonnell Douglas* burden shifting test for claims of disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, at the motion to dismiss stage, a plaintiff need only "plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87.

Starting with the first requirement, an employer's action is adverse if a plaintiff "endures a materially adverse change in the terms and conditions of

employment." *Id.* at 85 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  Plaintiff's complaint adequately alleges at least two adverse employment actions that plausibly meet this standard.

First, she alleges that her employer gave her a U-rating, which made her ineligible to work summer school.  Compl. at 9–10.  Second, Plaintiff alleges that her employer denied her per session employment opportunities.  *Id.* at 9.  As a result of these actions, Plaintiff contends that she lost pensionable income.  *Id.*  "Courts in the Second Circuit have held that the denial of per session and summer work can constitute adverse employment actions."  *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 452 (S.D.N.Y. 2023).  Accordingly, these allegations suffice to meet Plaintiff's burden of pleading that she suffered adverse employment actions.  Moreover, because Plaintiff alleges that Forman and Koswener-Bochbot were directly involved in the decision to give Plaintiff a U-rating, and Koswener-Bochbot gave Plaintiff's per session employment opportunities to another employee, *id.*, she has stated a claim against the individual defendants under SHRL.

Next, the Court considers whether Plaintiff has alleged facts that raise a plausible inference that her race and/or sex were motivating factors for the adverse action.  A plaintiff can raise an inference of discrimination by "showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group.'"  *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

With respect to the U-rating, Plaintiff's complaint alleges that Vera Leykina, who Plaintiff identifies as white, had a similar number of absences as Plaintiff and received a "similar letter to file," but did not receive a U-rating.  Compl. at 9. Additionally, Plaintiff alleges that Koswnener-Bochbot required Plaintiff to give a newly hired, part-time white speech therapist her per session work opportunities.  *Id.* Courts have held that an inference of discrimination may be supported "where a plaintiff's responsibilities are taken over by existing employees who are not members of the protected class."  *Shu-Chen Kuo v. Winklevoss Consultants, Inc.*, No. 16-cv-651, 2018 WL 4623023, at *13 (D. Conn. Sept. 26, 2018); *see also Felker v. Pepsi-Cola Co.*, 863 F. Supp. 71, 74 (D. Conn. 1994).

Beyond these instances of disparate treatment, Plaintiff alleges that after she made a comment during a round-table discussion that people of color in the school do not feel that justice is served, Compl. at 6, Forman stated in front of Plaintiff's colleagues that Plaintiff's complaint of racial discrimination against Malachowsky had been dismissed.  *Id.* at 8.  She further alleges that when she wrote to Forman and stated that she perceived his comments during the meeting as a form of subtle racism, Forman's behavior toward her changed.  *Id.*

At this stage, and in light of Plaintiff's *pro se* status, the Court concludes that Plaintiff has done enough to allege that, for both of these incidents, her employer treated her differently than similarly situated coworkers outside of her protected class.  Those allegations, taken together with Plaintiff's allegations regarding other

interactions about race with Forman, give rise to an inference of racial discrimination that is sufficient to defeat a motion to dismiss.

However, Plaintiff has failed to plead facts — with respect to these and any other alleged adverse employment actions — that give rise to an inference of discrimination based on sex. To the extent Plaintiff alleges that similarly situated employees were treated differently, she primarily points to other female employees. *See id.* at 9. And while she argues that Malachowsky is subject to preferential treatment, he is not similarly situated because, whereas Plaintiff received a U-rating for her "pattern of absences," *id.*, she alleges that Malachowsky made students miss instructional time by letting them out of class too early. *Id.* at 10.

Plaintiff also argues in her opposition that a white male psychologist, Mr. DiMarco, "ha[d] been consistently absent the day before the December holiday break" for over a decade yet had not been disciplined at any time for those unexcused absences. Pl.'s Opp. at 21. One absence per year is not sufficiently similar to Plaintiff's alleged absences during the course of a single school year to support an inference of discrimination based on sex.

Because Plaintiff has not alleged a similarly situated male comparator or any other evidence that would support an inference of sex-based discrimination, this aspect of her discrimination claim fails.

   ii.   <u>CHRL</u>

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably

possible.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011)).  Because Plaintiff's racial discrimination claim under Title VII and SHRL survives Defendants' motion to dismiss, it also survives dismissal under the more liberal CHRL.

However, even under CHRL, Plaintiff fails to plausibly plead sex-based discriminatory intent because she does not point to any similarly situated employees who were treated differently or any comments or other evidence that indicate her employer acted with sex-based discriminatory animus.

## B. Hostile Work Environment

Plaintiff brings hostile work environment claims under Title VII, SHRL, and CHRL.  The Court separately analyzes each claim.

### i. Title VII

To state a Title VII hostile work environment claim, Plaintiff must plead that the conduct "(1) is objectively severe or pervasive — that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" race or sex. *Anderson v. City of New York*, 712 F. Supp. 3d 412, 429 (S.D.N.Y. 2024).  However, at the motion to dismiss stage, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508

F.3d 106, 113 (2d Cir. 2007) (alteration in original) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Moreover, for DOE to be liable for such a hostile work environment, Plaintiff must show "a specific basis for imputing the conduct creating the hostile work environment to the employer," *Bently v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)), either through "strict vicarious liability if an employer's supervisor has created the hostile environment," or through "negligence if a co-worker who is not a supervisor has created the hostile environment, and the employer, upon becoming aware of the misconduct, fails to remedy it." *Id.* at 91.

As an initial matter, the Court notes that DOE cannot be held liable for Plaintiff's alleged unanswered requests for heat in her classroom because she makes no allegations that DOE was aware of this misconduct or failed to remedy it. However, Plaintiff has plausibly alleged that DOE is strictly liable for Forman's and Koswener-Bochbot's conduct as they acted as Plaintiff's supervisors.  Plaintiff has also plausibly alleged that DOE is liable for the December 4, 2019 incident in which Malachowsky allegedly screamed at Plaintiff, Compl. at 6, and the December 18, 2020 incident in which Malachowsky allegedly spread false rumors about Plaintiff, *id.* at 8, because she filed complaints about the incidents and no action was taken.

Plaintiff has stated a hostile work environment claim.  She has alleged: (1) that Malachowsky screamed at her, prompting her to file a claim of racial discrimination, *id.* at 6; (2) that Forman then responded to a remark Plaintiff made at a round-table

16

discussion about her perceptions of racial justice at the school by suddenly announcing in front of Plaintiff's colleagues that her discrimination complaint had been dismissed, *id.* at 8; (3) that, after telling Forman that she felt his conduct at the meeting was a form of subtle racism, Forman's behavior towards Plaintiff changed, *id.*; (4) that Forman and Koswener-Bochbot then improperly gave her a U-rating for the first time in her career, *id.* at 9; and (5) that Koswener-Bochbot gave away Plaintiff's per session employment opportunities to a newly hired colleague who, unlike Plaintiff, was only working at the school part time.  *Id.*

These allegations do "not rest on an isolated incident or stray remarks, but on a pattern of abusive activity of a quality and quantity that a reasonable employee would find worsened the conditions of his employment."  *Bonilla v. City of New York*, No. 18-cv-12142, 2019 WL 6050757, at *16 (S.D.N.Y. Nov. 15, 2019).  Moreover, as previously noted in the context of Plaintiff's discrimination claim, Plaintiff has done enough to establish she was subject to a hostile work environment based, "at least in part," on her race.  *Id.*  For the same reasons discussed above, however, Plaintiff has not done so with respect to her claim of sex-based discrimination.

ii.  <u>SHRL Claims Against Individual Defendants</u>

Under the SHRL, a Plaintiff whose claim accrued after October 11, 2019 is not required to plead that the hostile work environment was "severe and pervasive."  *Deering v. City of New York*, No. 21-cv-3601, 2023 WL 3997261, at *5 (E.D.N.Y. June 14, 2023).  Instead, SHRL hostile work environment claims require "allegations of 'inferior terms, conditions, or privileges of employment because of [a plaintiff's] membership in one or more protected categories.'"  *Id.* (alteration in original) (quoting

*Tortorici v. Bus-Tev, LLC*, No. 17-cv-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021)).

Plaintiff alleges that Forman failed to investigate claims against Malachowsky, made comments about Plaintiff's dismissed discrimination complaint at the round-table discussion, and gave Plaintiff an undeserved U-rating.  Compl. at 8–9.  Plaintiff further alleges that Koswener-Bochbot participated in the decision to give Plaintiff a U-rating, took away Plaintiff's per session work opportunities, and forced Plaintiff to go to an after-school meeting.  *Id.* at 9–10.

By alleging that Forman and Koswener-Bochbot took actions that, *inter alia*, lost Plaintiff pensionable income, *id.*, Plaintiff has plausibly alleged that Forman and Koswener-Bochbot subjected her to inferior terms, conditions, or privileges of employment.  And, as discussed above, because Plaintiff has alleged that other similarly situated employees who are white where treated differently, she has plausibly alleged that she was treated differently because of her race for purposes of her SHRL claim of race-based discrimination.  However, for the reasons stated with respect to Plaintiff's Title VII claim, Plaintiff has not plausibly alleged that she was treated disparately because of her sex.

### iii. CHRL Claims Against Individual Defendants

Under the CHRL, a plaintiff need only allege "that 'she has been treated less well than other employees because of' a protected characteristic."  *Springs v. City of New York*, No. 19-cv-11555, 2020 WL 3488893, at *7 (S.D.N.Y. June 26, 2020) (quoting *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y.

2013)).  Because Plaintiff's SHRL claim survives Defendants' motion to dismiss, so does her CHRL claim.

### C. Retaliation

To state a retaliation claim under Title VII and the SHRL, "a plaintiff must allege that he engaged in protected activity of which his employer was aware, that the employer took adverse action against him, and that the two were causally linked." *Deering*, 2023 WL 3997261, at *6.  A retaliation claim under the CHRL has "the same elements, though with a broader understanding of adverse action." *Id.*

Here, Defendants do not dispute that Plaintiff engaged in protected activity when she filed her OEO, SDHR and EEOC complaints, and that she was, at certain times thereafter, subject to adverse employment actions.  They argue, however, that Plaintiff has not plausibly alleged that her protected activities have any causal link to these subsequent adverse employment actions.  Defs.' Mem. at 30–31.

"A causal link requires '(1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities.'" *Deering*, 2023 WL 3997261, at *6 (quoting *McNair v. New York City Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001)).  Plaintiff alleges that she filed a dual SDHR and EEOC complaint on August 31, 2022, and was forced to give away her existing per session opportunities in October 2022 — a little over one month after filing the dual complaints.  Compl. at 9.

The Second Circuit has held that "five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

19

Accordingly, the temporal link here is sufficient to allege causation.  In addition, because Plaintiff has alleged that her per session opportunities were given to a newly hired, part-time speech therapist who (reading the complaint liberally) had not filed any complaints about workplace discrimination, Compl. at 9, she has raised an inference of disparate treatment sufficient to allege causation.

Plaintiff also alleges that she filed her second OEO complaint on January 28, 2021, *id.* at 8, and received a letter regarding her absences and her first-ever U-rating in a periodic review occurring on June 17, 2022, *id.* at 9.  While there was a seventeen-month lapse between these two events, the Second Circuit "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation."  *Gorzynski*, 596 F.3d at 110.  Moreover, longer temporal lapses can support an inference of causation where it is plausible that an employer "waited to exact [its] retaliation at an opportune time."  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that a six-month lapse between the dismissal of a plaintiff's lawsuit and an allegedly retaliatory act was sufficient to support an inference of causation).

Here, based on Plaintiff's alleged timeline of events, the Court finds that Defendants have not met their burden of showing that there is no plausible inference that can be drawn from the Complaint regarding a nexus between Plaintiff's 2021 OEO complaint and her 2022 U-rating.  Construing the Complaint in the light most favorable to the *pro se* Plaintiff, June 2022 may have been the first opportunity that Defendants had to give Plaintiff a U-rating based on what Plaintiff contends was a

pretextual reason for doing so: a pattern of alleged excessive and unexcused absences. *See* Compl. at 8–9.  Indeed, Plaintiff alleges that the U-rating was purportedly based on absences that did not begin until after she received the COVID-19 vaccine in the fall of 2021 and became ill from its side effects.  *Id.* at 9.  This raises a plausible inference that the "opportune time" to retaliate against Plaintiff may not have arisen until the next annual rating cycle.  *See Espinal*, 558 F.3d at 129.

Accordingly, after affording Plaintiff both a liberal construction of her Complaint and the benefit of all favorable inferences from the facts she has alleged, the Court finds that Plaintiff has plausibly alleged a retaliation claim under Title VII. And because Defendants Forman and Koswener-Bochbot were involved in giving the U-rating, and Koswener-Bochbot was involved in denying Plaintiff per session work opportunities, Compl. at 9, Plaintiff's SHRL and CHRL retaliation claims against the individual defendants survive as well.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's SHRL and CHRL claims against DOE, her Title VII claims against the individual defendants, and her sex-based discrimination and hostile work environment claims against all Defendants.  The Court denies Defendants' motion in all other respects.

"[L]eave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228

F.3d 68, 81 (2d Cir. 2000)).  Accordingly, Plaintiff is granted leave to amend her complaint to address the deficiencies addressed herein.  If Plaintiff chooses to file an amended complaint, she shall do so within thirty days of this Order.

SO ORDERED.

_/s/ NRM_

NINA R. MORRISON
United States District Judge

Dated: September 27, 2024
        Brooklyn, New York